# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| DIVERSIFIED METAL PRODUCTS, INCORPORATED, an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BECHTEL NATIONAL, INC., a Nevada corporation,<br><br>Defendant. | Case No.: 09-415-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT BECHTEL NATIONAL, INC.'S MOTION TO COMPEL**<br><br>**(Docket No. 20)** |

Currently pending before the Court is Defendant Bechtel National, Inc.'s Motion to Compel (Docket No. 20). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:[1]

## I. BACKGROUND

1.  Plaintiff brought this action on August 25, 2009. *See* Compl. (Docket No. 1). Within its Complaint, Plaintiff outlined different categories of damages as to the various causes of action. For example, the Complaint stated:

    a.  "For the First Cause of Action, damages in an amount to be proven at trial, but in excess of Six Hundred Thirty-Three Thousand Six Hundred Ninety-Nine and

---

[1] Although less comprehensive than it otherwise may have been, for the benefit of the parties, and recognizing the approaching deadlines pursuant to the August 16, 2010 Order Re: Stipulation for Scheduling (Docket No. 19), the Court's discussion here addresses the relief requested within Defendant's Motion.

**MEMORANDUM DECISION AND ORDER - 1**

    no/100 Dollars ($633,699.00), plus interest thereon at the maximum rate allowed by law";

b.  "For the Second Cause of Action, damages in an amount to be proven at trial, but in excess of Seven Hundred Two Thousand Thirty-Nine and no/100 Dollars ($702,039.00), plus interest thereon at the maximum rate allowed by law";

c.  "For the Third Cause of Action, damages in an amount to be proven at trial, but in excess of Five Hundred Ninety-Four [Thousand] Two Hundred Ninety-Four and no/100 Dollars ($594,294.00), plus interest thereon at the maximum rate allowed by law"; and

d.  "For the Fourth and Fifth Causes of Action, damages in an amount to be proven at trial, but in excess of One Million Nine Hundred Thousand Dollars ($1,900,000.00), plus interest thereon at the maximum rate allowed by law." *See id.* at p. 7, ¶¶ 1-4.

2. On January 5, 2010, U.S. District Judge Edward J. Lodge issued a Scheduling Order (Docket No. 16) outlining, among other things, the parties' expert disclosure deadlines. At that time, Plaintiff was to disclose expert witnesses and the expected testimony of those witnesses on or before September 10, 2010; Defendant was to disclose expert witnesses and the expected testimony of those witnesses on or before November 5, 2010; and Plaintiff was to disclose its rebuttal expert witnesses on or before December 10, 2010. *See id.* at p. 1. An October 11, 2011 trial date was also set. *See id.* at p. 4.

3. On or around January 14, 2010, Plaintiff submitted its FRCP 26(a)(1) Initial Disclosures. *See* Pl.'s Initial Disclosures, attached as Ex. 1 to 10/25/10 Bavand Aff. at ¶ 3 (Docket No.

**MEMORANDUM DECISION AND ORDER - 2**

20, Att. 3). There, Plaintiff "estimated its *current, preliminary* damages which are subject to change" to include the following:

    a.    "Breach of Contract - Bulges: Plaintiff has estimated its damages as of the date of the Complaint to be not less than $633,188.00. The computation of damages is attached as <u>Exhibit A</u>[2] to this disclosure statement (the 'Disclosure Statement').";

    b.    "Breach of Contract - WESP: Plaintiff has estimated its damages as of the date of the Complaint to be not less than $644,698.00. See <u>Exhibit A</u> to this Disclosure Statement."; and

    c.    "Breach of Contract - MDE: Plaintiff has estimated its damages as of the date of the Complaint to be not less than $594,294.00. See <u>Exhibit A</u> to this Disclosure Statement." *See id.* at p. 9 (italics and underlining in original).

4. On August 3, 2010, Defendant "propounded interrogatories seeking further specific information not previously provided regarding the amount of damages, the basis for the claims, and the method by which the damages were calculated." *See* Def.'s Mem. in Supp. of Mot. to Compel, p. 4 (Docket No. 20, Att. 1).

5. On August 13, 2010, the parties submitted a "Stipulation for Scheduling," requesting, among other things, an extension in the expert disclosure deadlines identified in the January 5, 2010 Scheduling Order. *See* Stip. for Scheduling, p. 2 (Docket No. 18). Specifically, the parties stipulated that Plaintiff shall disclose expert witnesses and the expected testimony of those witnesses on or before December 3, 2010; Defendant shall

---

[2] Exhibit A to Plaintiff's Initial Disclosures included a chart reflecting an "assessment of unabsorbed/extended overheads" totaling $1,872,181.38.

**MEMORANDUM DECISION AND ORDER - 3**

disclose expert witnesses and the expected testimony of those witnesses on or before February 4, 2011; and all rebuttal experts shall be disclosed on or before March 11, 2011. *See id.* On August 16, 2010, the undersigned adopted the amended expert disclosure dates identified in the parties' Stipulation for Scheduling. *See* Order Re: Stipulation for Scheduling (Docket No. 19).

6. On or around September 3, 2010, Plaintiff responded to Defendant's August 3, 2010 discovery requests. *See* Pl.'s Discovery Responses, attached as Ex. 2 to 10/25/10 Bavand Aff. at ¶ 4 (Docket No. 20, Att. 3). In relevant part, Defendant's interrogatories and Plaintiff's responses read:

> INTERROGATORY NO. 1: Identify any damages to which Diversified claims it is entitled relating to the Wet Electrostatic Precipitators. Please include the method by which you calculate the damages and the basis for calculating the damages this way.
>
> ANSWER: Plaintiff objects to this Interrogatory on the basis that it calls for premature disclosure of expert opinion. This Interrogatory also seeks attorney work-product. Plaintiff has not decided on which expert witnesses may be called at trial; insofar as this Interrogatory seeks to ascertain the identity, writings, and opinions of Plaintiff's experts who have been retained or utilized to date as an advisor or consultant, it is violative of the work-product doctrine. Without waiving these objections or the Continuing Objections noted above, Plaintiff incorporates by reference its Rule 26 Disclosures. Plaintiff further states that it will supplement this response in accordance with the Order Re: Stipulation for Scheduling filed on August 16, 2010.
>
> Without waiving the foregoing objections, Plaintiff responds that it has preliminarily ascertained the damages it has incurred, subject to change based upon discovery of additional facts or further review of existing facts or both. Plaintiff preliminarily responds that DMP has incurred damages for the Wet Electrostatic Precipitators ("WESP"), Bulges, and Maintenance Decontamination Equipment ("MDE") contracts cumulatively in the amount of $6,358,116 for which it is entitled recovery from Bechtel. Damages have been preliminarily calculated through analyses of actual costs incurred in the impacted

performance of the delayed and disrupted work in excess of amounts actually paid by Bechtel. The factual elements that give rise to DMP's increased costs support the calculation of damages as stated above.

DMP has also conducted additional restrictive analyses of damages limited to the delay component of impacted performance for quantification of its Unabsorbed/Extended Overhead costs in the amount of $783,671 for the WESP contract (with preliminary damages computed based on a 04/03/06 contract completion date), $711,966 for the Bulges contract (with preliminary damages computed based on a 12/31/07* contract completion date), and $685,944 for the MDE contract (with preliminary damages computed based on a 12/31/07* contract completion date). DMP quantifications also include an additional $83,308 in labor escalation,
additional Project Management and Change Order Administration costs specific to the WESP Contract. The quantification of DMP's Unabsorbed/Extended Overhead costs is based on analyses of DMP's Actual Daily Allocable Overhead Rates specific to each contract applied to the Bechtel responsible days of extended performance for each contract separately. The factual elements that give rise to DMP's Unabsorbed/Extended Overhead costs support the calculation of damages as stated above for these specific cost components.

(*Bechtel has delayed and disrupted DMP's performance beyond 12/31/07 and well beyond what the Parties reasonably could have anticipated (e.g., the MDE was not shipped until 08/09 and the Bulges have still not shipped as of this date). In this regard, DMP's quantification of Unabsorbed/Extended Overhead costs is subject to further analysis and supplementation.)

INTERROGATORY NO. 2: Please provide the total overhead during the work on the Wet Electrostatic Precipitators.

ANSWER: Plaintiff objects to this Interrogatory on the basis that it is vague and ambiguous as to what "overhead" includes or entails. Plaintiff further objects on the basis that this Interrogatory calls for premature disclosure of expert opinion. This Interrogatory also seeks attorney work-product. Plaintiff has not decided on which expert witnesses may be called at trial; insofar as this Interrogatory seeks to ascertain the identity, writings, and opinions of Plaintiff s experts who have been retained or utilized to date as an advisor or consultant, it is violative of the work-product doctrine. Without waiving these

> objections or the Continuing Objections noted above, Plaintiff incorporates by reference its Rule 26 Disclosures. Plaintiff further states that it will supplement this response in accordance with the Order Re: Stipulation for Scheduling filed on August 16, 2010.
>
> Without waiving the foregoing objections, Plaintiff responds that it has preliminarily ascertained the total overhead, subject to change based upon discovery of additional facts or further review of existing facts or both. Without waiving the foregoing objections, Plaintiff responds that, subject to refinement, DMP's total overhead during the WESP contract performance period is in the approximate amount of $4,875,241.

*See id.* Specific to Wet Electrostatic Precipitators, Defendant also requested (and Plaintiff provided) information relating to work delays/suspensions, replacement work, other work performed during the delays/suspensions, and mitigation of damages. *See id.* Defendants also sought (and Plaintiff provided) information relating to the Bulges and the Maintenance Decontamination Equipment. *See id.*

7. On October 25, 2010, Defendant filed the at-issue Motion, requesting an order compelling Plaintiff to (1) provide an updated initial disclosure in accord with FRCP 26(a); and (2) provide a complete response to Defendant's interrogatories. *See* Def.'s Mem. in Supp. of Mot. to Compel, p. 2 (Docket No. 20, Att. 1). Defendant further requested that this Court not only sanction Plaintiff for its failure to comply with the Federal Rules of Civil Procedure, but also that it be given an additional 30 days to submit its expert disclosures. *See id.*

8. Plaintiff opposes Defendant's Motion arguing, generally, that its initial disclosures and discovery responses are adequate, particularly in light of its December 3, 2010 expert disclosure deadline. *See* Pl.'s Opp. to Mot. to Compel, p. 5 (Docket No. 23). According to Plaintiff, its "expert disclosures, including a precise calculation of [Plaintiff's]

**MEMORANDUM DECISION AND ORDER - 6**

damages and responses to [Defendant's] discovery requests, will be disclosed on or before [December 3, 2010], as contemplated by Rule 26(a)(2), the Court's Scheduling Order, and the Order Re: Stipulation for Scheduling. . . . . Waiting until December 3, 2010 for [Plaintiff's] expert opinion which will contain all the information [Defendant] is seeking (including both initial disclosure updates and supplemental discovery responses) is completely harmless." *See id.*[3]

## II. DISCUSSION

Preliminarily, the Court concludes that Defendant understates the extent of Plaintiff's discovery responses regarding damages and, in doing so, overstates its position in support of its Motion. That is, when reviewing only Defendant's briefing, one might conclude that Plaintiff altogether ignored its obligations to submit initial disclosures (and, correspondingly, preliminary damage calculations) and respond in good faith to Defendant's discovery requests. However, a full review of Plaintiff's initial disclosures and discovery responses paints a different picture - one that appropriately puts Defendant on notice of the general nature of damages sought in terms of particular theories vis à vis the stated claims. This is a construction claim dispute, and a dispute that appears to be evolving even as the case is pending. Further, as the record describes, the nature of the particular construction work is highly specialized, and even novel in some respects, as it pertains to the daunting, and no doubt sometimes Herculean, task of nuclear waste clean-up at the grandfather of such waste sites – the federal government's Hanford, Washington facility.

---

[3] Notably, although Defendant submitted a reply memorandum in support of its Motion on November 29, 2010 (Docket No. 24), that reply wasn't actually due until December 6, 2010 (Docket No. 23) - three days *after* Plaintiff's expert disclosure deadline.

**MEMORANDUM DECISION AND ORDER - 7**

Accordingly, both in the underlying nature of the type of claims and in the particular details of the alleged damages associated with such claims, it does not strike the Court as unusual that the description of such claims will evolve from the early date of initial disclosures through the completion of the usual sort of forensic claim assessment done by experts in such cases. In other words, any deviation in the amount of damages sought over time - particularly this far ahead of the trial date - is not necessarily an indication of a litigant's intent to deceive the other side through some sort of procedural sleight of hand.

Even so, a party certainly has an obligation to timely respond to discovery in good faith and in full fashion, insofar as a party is able to do at the time of receiving such discovery, and not use the fact of an expert disclosure deadline as a means of skirting the discovery rules. It appears that Defendant is arguing that such has occurred here; however, the Court is not persuaded, on this record, that the Plaintiff has failed to respond to discovery in good faith by hiding behind the expert witness disclosure deadline. There has been both a generalized description of the nature, *i.e.*, the "theory," of Plaintiff's claims, and a reasonably detailed – pending completion of the expert's work – identification of the amount and basis for the alleged damages. With such information, Defendant has the ability to begin to prepare its own expert bulwark, even if particular damage numbers – set out in some Lotus Notes framework or otherwise – is not yet available. The fact that the amount of claimed damages has increased significantly from the initial disclosures to the discovery responses may be fertile ground for careful scrutiny and cross-examination. It is not, however, standing alone, evidence of inescapable prejudice to the defending party.

Moreover, while it is true that Plaintiff's damages calculations could be more comprehensive than what is outlined in both its initial disclosures and discovery responses, those

**MEMORANDUM DECISION AND ORDER - 8**

calculations cannot be viewed in isolation. The docket record indicates that Plaintiff's expert disclosures (presumably addressing the very concerns that Defendant raises within its Motion) have, as of the date of this Order, already been supplied to Defendant - in fact, would have been supplied to Defendant *before* Defendant was even required to submit any reply in support of its Motion. *See supra* at p. 7, n. 3. The Court finds that, based upon the record now before it, the intricacies associated with the damages claimed here are appropriate for an expert's consideration and separate opinion. If Defendant concludes on its own that the reports of Plaintiff's expert opinions are inadequate in some measure under the Rules of Civil Procedure and/or Evidence, Defendant is free to so move the Court for relief. Until then, however, Defendant's Motion is denied.

To allay any lingering concerns, and recognizing the particular complexity of the claims at issue in this case, the Court will nonetheless extend Defendant's expert(s) an additional amount of time to respond to Plaintiff's expert reports.[4] Therefore, Defendant shall disclose expert witnesses and the expected testimony of those witnesses on or before March 4, 2011. Relatedly, all rebuttal experts shall be disclosed on or before April 8, 2011. All other applicable dates within the Court's Order Re: Stipulation for Scheduling (Docket No. 19) and Scheduling Order (Docket No. 16) shall remain the same.

///

///

---

[4] The scope of Defendant's Motion relates to Plaintiff's damages calculation. With this in mind, it would seem appropriate to extend only Defendant's damages expert. However, to maintain a consistent deadline protocol, this portion of the Order extending Defendant's expert deadline applies to *all* of Defendant's experts.

**MEMORANDUM DECISION AND ORDER - 9**

## III. ORDER

Based upon the foregoing IT IS HEREBY ORDERED that Defendant Bechtel National, Inc.'s Motion to Compel (Docket No. 20) is DENIED. Still, Defendant's expert disclosures will be extended to March 4, 2011; all rebuttal experts shall be disclosed on or before April 8, 2011.

DATED: **January 6, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge